UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PEGGY WAY,
    Plaintiff

vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:10-cv-535
Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for Supplemental Security Income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 6) and the Commissioner's response in opposition. (Doc. 9).

**PROCEDURAL BACKGROUND**

Plaintiff was born in 1958. She has an eleventh grade education and past relevant work as a restaurant cashier. Plaintiff last worked on January 19, 2002.

Plaintiff filed three applications for SSI. Plaintiff filed the first application in October 2003. (*See* Tr. 27). The application was denied on initial review in 2004, and plaintiff did not pursue further administrative review of that application. (*Id.*).

Plaintiff filed the second application for SSI in May 2004, alleging a disability onset date of January 27, 2002. (*See id.*). The application was denied initially in August 2004 and upon reconsideration on January 21, 2005. (*Id.*). Plaintiff then requested and was granted a de novo hearing before administrative law judge (ALJ) Samuel A. Rodner on September 1, 2006. (*Id.*). Plaintiff, who was represented by counsel, appeared at the hearing. An independent vocational

expert (VE) also appeared and testified at the hearing. (*Id.*). The ALJ issued a decision on January 25, 2007, denying plaintiff's SSI application on the ground that plaintiff had not been under a disability as defined in the Social Security Act since October 28, 2003, the date the application was protectively filed. (Tr. 27-36). The ALJ determined that plaintiff has the residual functional capacity (RFC) for light work with certain postural limitations (Tr. 30); based on the testimony of the VE, she is capable of performing her past relevant work as a cashier (Tr. 34-35); and in the alternative, based on the VE's testimony and using Grid Rule 204.00 as a framework for decision-making, she could perform other semi-skilled sedentary cashier jobs and other unskilled light and sedentary jobs which exist in significant numbers in the national economy. (Tr. 35). Plaintiff's request for review by the Appeals Council was denied in September 2007. (Tr. 10). Plaintiff did not seek judicial review of this decision.

In the meantime, plaintiff filed her third application for SSI, which is presently before the Court, on February 23, 2007. (*See* Tr. 325, 546). The application was denied initially and upon reconsideration. (Tr. 325-326). Plaintiff then requested and was granted a de novo hearing before ALJ Deborah Smith on June 30, 2009. (Tr. 543-573). Plaintiff, who was represented by counsel, appeared at the hearing. During the hearing, plaintiff amended the alleged onset date of disability to February 23, 2007, the protective filing date of the application. (Tr. 297, 546).

On July 22, 2009, ALJ Smith issued a decision denying plaintiff's SSI application. (Tr. 294-306). ALJ Smith determined that plaintiff has not engaged in substantial gainful activity since the amended alleged onset date; she has the severe impairment of "status post [] remote partial patellectomy and tendon advancement for a left closed patella fracture" (Tr. 299); and she does not have an impairment or combination of impairments that meets or medically equals any in

the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. ALJ Smith determined that plaintiff retains the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with additional postural limitations. Specifically, plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently; in an eight-hour workday, she can stand and/or walk six hours and sit for a total of six hours, if allowed the opportunity to stretch for two to three minutes after one hour of sitting; pushing and/or pulling are limited in the left lower extremity but not in the right lower extremity; and plaintiff should never climb ladders, ropes or scaffolds or stoop, kneel, crouch or crawl.

In rendering her RFC determination, ALJ Smith recognized she was bound under principles of administrative res judicata by ALJ Rodner's prior RFC finding, absent new and material evidence pertaining to that finding. (Tr. 303, citing Acquiescence Ruling 98-4(6), 1998 WL 283902 (June 1, 1998); *Drummond v. Commissioner of Social Sec.*, 126 F.3d 837, 841 (6th Cir. 1997)). ALJ Smith noted that in the prior decision, ALJ Rodner had given considerable weight to the state agency medical consultant's assessment restricting plaintiff to light work with additional postural limitations, and ALJ Rodner had relied on the lack of persuasive evidence that plaintiff was required to elevate her left knee or use a cane. ALJ Smith found that with respect to the current application, there were still no statements from treating or examining sources assessing plaintiff's functional capacity or suggesting she is disabled. (Tr. 303).

ALJ Smith further recognized that in addition to being bound by ALJ Rodner's prior RFC determination, she was bound by ALJ Rodner's findings as to the demands of plaintiff's past relevant work. (Tr. 305, citing *Drummond*, 126 F.3d at 841; AR 98-4(6)). ALJ Smith found that the VE testimony elicited at the prior hearing remained applicable under the record before her.

3

ALJ Smith determined that plaintiff remains capable of performing her past relevant semi-skilled work as a cashier. ALJ Smith further determined that applying the Grid and the VE's testimony from the prior hearing, there are semi-skilled and unskilled jobs that exist in significant numbers in the national economy that plaintiff could perform at the light level, as well as at the sedentary level if plaintiff were found to be restricted to sedentary work because of her left knee. ALJ Smith concluded that plaintiff has not been under a disability within the meaning of the Social Security Act at any time since February 23, 2007. (Tr. 306).

The Appeals Council denied plaintiff's request for review (Tr. 287-289), making the decision of ALJ Smith the final administrative decision of the Commissioner.

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

To qualify for SSI, plaintiff must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202.

4

Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments. An impairment can be considered as not severe only if the impairment is a "slight abnormality" which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience. *Farris v. Sec'y of HHS,* 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted). *See also, Bowen v. Yuckert,* 482 U.S. 137 (1987). If the individual does not have a severe impairment, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing sets forth certain impairments which are presumed to be of sufficient severity to prevent the performance of work. 20 C.F.R. § 404.1525(a). Plaintiff's impairment need not precisely meet the criteria of the Listing in order to obtain benefits. It is sufficient if the impairment is medically equivalent to one in the Listing. 20

C.F.R. § 404.1520(d). To determine medical equivalence, the Commissioner compares the symptoms, signs, and laboratory findings concerning the alleged impairment with the medical criteria of the listed impairment. 20 C.F.R. § 404.1526(a). The decision is based solely on the medical evidence, which must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1526(b). If the impairment meets or equals any within the Listing, the Commissioner renders a finding of disability without consideration of the individual's age, education, and work experience. 20 C.F.R. § 404.1520(d); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 528 (6th Cir. 1981). Fourth, if the individual's impairments do not meet or equal any in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048, 1053 (6th Cir. 1983).

Plaintiff has the burden of proof at the first four steps of the sequential evaluation process. *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999). *See also Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *Wilson*, 378 F.3d at 548. *See also Richardson v. Secretary of Health & Human*

*Services*, 735 F.2d 962, 964 (6th Cir. 1984). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *Wilson*, 378 F.3d at 548.

## OPINION

The parties have adequately summarized the pertinent medical findings and opinions in their briefs. (Doc. 6 at 2, 4-5; Doc. 9 at 2-7). Those findings and opinions will not be repeated here. Where applicable, the Court will identify the medical evidence relevant to its decision.

Plaintiff claims as her sole assignment of error that ALJ Smith erred by adopting the prior decision of ALJ Rodner issued on January 25, 2007. (Doc. 6). Plaintiff's argument, though difficult to follow, is two-fold. The first prong of plaintiff's argument is, in essence, a collateral attack on ALJ Rodner's decision. Plaintiff claims that ALJ Rodner erroneously relied on VE testimony which did not accurately reflect her RFC. Plaintiff claims that ALJ Rodner improperly disregarded testimony by the VE that if plaintiff's complaints regarding her limitations were accepted, plaintiff would be precluded from engaging in any type of remunerative employment. Plaintiff suggests that ALJ Rodner erred by discounting her complaints regarding her limitations even though they were, and continue to be, supported by evidence in the record. Plaintiff claims that Dr. Martin Fritzhand, M.D., a consultative examining physician, found the following limitations: instability of the left leg; diminished extension of the spine; an inability to squat or kneel; marked gait disturbance; and potentially the inability to perform even a mild amount of ambulating, standing, bending, pushing, pulling, lifting and carrying. (Doc. 6, citing Tr. 464-

465).[1] Plaintiff claims that "[m]ore recently" there is evidence of back pain, neck pain and spasm, chronic bilateral knee pain and edema, pain with prolonged standing and climbing stairs, difficulty walking, and wrist pain. (*Id.*, citing Tr. 452, 457, 461, 465, 466, 490, 492, 497, 500, 501, 502, 503-504, 507, 508, 509-511, 512-516, 519, 533). Plaintiff further asserts that her complaints are substantiated by objective findings which include tenderness to palpation, decreased range of motion, and unspecified "physical evidence of degenerative arthritis and meniscus problems"; emergency room reports from August of 2006 which document degenerative arthritis in both knees; cervical radiculopathy resulting from degenerative disc disease; and "wrist pain." (*Id.*, citing Tr. 260, 457, 465, 490, 497, 502, 508, 512, 514, 516, 518). Plaintiff also alleges that treating doctor and hospital records support her complaints of pain in her knees, neck and arm. (*Id.*, citing Tr. 167, 188, 195, 196, 213, 214, 216, 218, 250-258, 260, 273, 276).[2] Finally, plaintiff suggests that her failure to show for appointments was not a valid basis for ALJ Rodner (and ALJ Smith) to discount her credibility.

The second component of plaintiff's argument is that ALJ Smith erred by failing to consider new and material evidence showing her condition has worsened since ALJ Rodner issued his decision, and by failing to elicit new VE testimony which takes the functional limitations imposed by her worsened condition into account. Plaintiff claims, "By all logic, [her] RFC should be worse than Judge Rodner found in 2007." (*Id.* at 6). Plaintiff alleges there is new evidence of

---

[1] Dr. Fritzhand's report is actually found at Tr. 173-175. As a point of clarification, Dr. Fritzhand noted that it was difficult to assess plaintiff's functional impairment because she held the knee rigidly in complete extension, and he did not know if she could flex the knee. He stated that she could not perform the above functions "[i]f she cannot flex the knee." (Tr. 175).

[2] Plaintiff simply cites transcript pages in support of her claims of recent evidence of pain and objective findings to substantiate her complaints. However, she fails to describe the nature of the evidence, provide dates, or identify the significance of such evidence.

8

a "wrist impairment," as well as objective medical evidence and clinical findings subsequent to ALJ Rodner's decision which show that her left knee impairment has worsened since that time. (*Id*. at 5-6). Plaintiff alleges that because ALJ Smith failed to consider the effect her allegedly worsened condition would have on her RFC, ALJ Smith's adoption of ALJ Rodner's RFC for light work is not supported by substantial evidence and remand is warranted for additional fact-finding.

In response, the Commissioner claims that a large part of plaintiff's argument focuses on the merits of ALJ Rodner's 2007 decision. The Commissioner contends that because plaintiff chose not to seek judicial review of that final and appealable decision within 60 days of the Appeals Council's denial of review on September 7, 2007, plaintiff must abide by ALJ Rodner's decision and cannot seek review indirectly by attacking the decision as part of her appeal of ALJ Smith's decision. *See* 20 C.F.R. § 422.210(c) (civil action must be instituted within 60 days of receipt of Appeals Council's notice of denial of request for review); *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435-436 (6th Cir. 2007) (same); 20 C.F.R. § 416.1481 (decision of ALJ is binding unless claimant or another party files an action in federal district court within 60 days after the date the claimant receives notice of the Appeals Council's decision).

In addition, the Commissioner argues that plaintiff has failed to point to any evidence showing she has new or worsening impairments since February 23, 2007, the date plaintiff filed the application presently under consideration. (*See* Tr. 297). The Commissioner asserts that ALJ Smith carefully reviewed the objective medical evidence for the period beginning after the date of ALJ Rodner's decision and compared it to the medical evidence which had been before ALJ

Rodner. The Commissioner claims ALJ Smith reasonably concluded there was no evidence showing a worsening of plaintiff's medical condition.

Plaintiff's argument that ALJ Smith erred by not reconsidering the RFC assessment and other findings made as part of ALJ Rodner's sequential evaluation is not well-taken. First, plaintiff cannot challenge ALJ Rodner's findings at this point. The Appeals Council denied review of ALJ Rodner's decision on September 7, 2007. Plaintiff had 60 days after receipt of the Appeals Council's notice of its decision to deny review to institute a civil action seeking judicial review of the Commissioner's decision. 20 C.F.R. § 422.210(c). Plaintiff failed to institute a civil action within that time frame, and ALJ Rodner's decision is therefore binding on both plaintiff and the Commissioner. *See Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997) (claimants and Commissioner are bound by principles of res judicata). *See also* 42 U.S.C. § 405(h) ("The findings and decision of the Commissioner of Social Security after a hearing shall be binding on all individuals who were parties to such hearing."); 20 C.F.R. § 416.1481 (if request for review by Appeals Council is denied, decision of ALJ is binding unless claimant files an action in Federal district court within 60 days). This Court cannot consider plaintiff's challenges to ALJ Rodner's findings in connection with her present application.

Second, with respect to the unadjudicated period following ALJ Rodner's decision, ALJ Smith correctly acknowledged in her decision that she was bound by ALJ Rodner's findings as to plaintiff's RFC and the demands of plaintiff's prior work, absent new and material evidence pertaining to these findings. (Tr. 303, citing *Drummond*, 126 F.3d at 841; Acquiescence Ruling 98-4(6)). Principles of administrative res judicata apply to a decision concerning a claimant's eligibility for social security benefits. *Drummond*, 126 F.3d at 841; AR 98-4(6). Social security

10

claimants and the Commissioner alike are barred from relitigating issues that have previously been determined. *Drummond,* 126 F.3d at 842. Absent evidence that a claimant's condition has improved, findings issued by an ALJ in a prior disability determination are binding on an ALJ in a subsequent proceeding. *Drummond*, 126 F.3d at 841 (citing 20 C.F.R. § 404.905). The Commissioner has recognized the binding effect of findings made in a prior adjudication on subsequent adjudicators:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law. . . .

AR 98-4(6).

Plaintiff alleges that ALJ Smith erred by failing to consider new evidence of a wrist impairment and evidence of plaintiff's worsening knee condition. (Doc. 6 at 5). However, a careful review of ALJ Smith's decision discloses that she fully considered the record evidence related to plaintiff's wrist pain. ALJ Smith noted that plaintiff first reported wrist pain on October 8, 2008, by informing an emergency room physician she had experienced the pain for only "the past several days;" x-rays taken that date of the right hand and wrist were negative for fractures; and plaintiff was treated for tendinitis at that time. (Tr. 302, citing Tr. 533-535). Subsequently, plaintiff was referred to Dr. Mohab Foad, M.D., who diagnosed right De Quervain disease[3] and performed a right open first dorsal compartment release on April 13, 2009. (*Id.*, citing Tr. 524). ALJ Smith noted that although plaintiff testified there was no improvement after the surgery, the

---

[3]De Quervain's disease is an "entrapment tendinitis of the tendons contained within the first dorsal compartment of the wrists." http://emedicine.medscape.com/srticle/1243387-overview#a0103 (last accessed June 7, 2011). The condition causes pain during thumb motion.

11

record includes no reports of any follow-up appointments with the surgeon, no other evidence to suggest the condition has not resolved, and no objective evidence to suggest that plaintiff's wrist condition would be expected to persist for 12 consecutive months. (Tr. 302).

Plaintiff cites no additional evidence which demonstrates she suffers from a severe wrist impairment. Plaintiff cites only two medical records referencing wrist pain. These are the emergency room records cited by the ALJ and notes from her primary care physician dated December 2, 2008, stating that plaintiff had complaints of right wrist pain[4] and listing the De Quervain's tendinitis diagnosis. (Doc. 6 at 5, citing Tr. 502, 533).[5] These records in no manner indicate that plaintiff's wrist pain was so severe as to be disabling or that plaintiff's wrist impairment caused any functional limitations. Nor is there any indication that her wrist impairment lasted for more than 12 months or could be expected to last for at least 12 months. Thus, the ALJ's decision that plaintiff's wrist impairment does not meet the definition of a "severe" impairment is supported by substantial evidence.

Plaintiff has also failed to show that ALJ Smith erred by finding that the objective medical evidence and clinical findings subsequent to ALJ Rodner's decision do not show a worsening of her left knee impairment. Plaintiff claims that her RFC "should be worse" than ALJ Rodner found it to be in 2007. (Doc. 6 at 6). However, plaintiff cannot base her claim on speculation. Plaintiff must point to evidence to support her argument that her knee impairment has worsened since 2007 to a degree that she is no longer able to perform her past relevant work. *See Wilson,* 378 F.3d at 548 (plaintiff has the burden of proof at the first four steps of the sequential evaluation

---

[4]There is additional writing on the line of the report where plaintiff's complaints of wrist pain are noted, but the writing is illegible.

[5]Plaintiff also cites Tr. 519, but there is no mention of wrist pain on that page of the record.

12

process). Plaintiff has failed to cite any evidence whatsoever to show her knee condition has worsened subsequent to ALJ Rodner's decision.

Moreover, ALJ Smith thoroughly reviewed the medical evidence and clinical findings related to plaintiff's left knee impairment subsequent to ALJ Rodner's decision. (Tr. 301-302). ALJ Smith cites substantial evidence to support her determination that the evidence did not show a worsening of plaintiff's left knee impairment. (Tr. 303-304). None of the numerous examinations of plaintiff's knee showed swelling which would require her to elevate her leg, and there was no evidence she had ever received medical advice to do so. Although plaintiff used a cane, there was no evidence that an orthopedist had prescribed the cane for her; the records showed she did not always use an assistive device; and ALJ Smith questioned whether plaintiff needed an assistive device given that her patellar fracture has healed and she has normal strength in the left lower extremity. ALJ Smith noted that plaintiff had been uncooperative when two physicians had attempted range of motion tests, but plaintiff reached full flexion of 120 degrees when tested by a third physician, Dr. Keith Kenter, M.D. (Tr. 304, citing Tr. 496). Notes from plaintiff's hospitalization for wrist surgery in April 2009 did not list knee pain or other knee issues among plaintiff's ongoing medical issues; the medical history noted that plaintiff was able to climb two flights of stairs without chest pain or shortness of breath; no problems were noted with plaintiff's extremities; and no mention was made of a cane. (*Id.*, citing Tr. 526-527). Finally, ALJ Smith noted that plaintiff was not compliant with physical therapy. (Tr. 304). Although plaintiff told her family physician on March 9, 2009, that she had finished her physical therapy for her knee and was feeling better (*Id.*, citing Tr. 500), plaintiff had not submitted any records of such therapy. Moreover, plaintiff received a prescription for physical therapy from Dr. Le on June

13

25, 2009 (*Id.*, citing Tr. 538), but plaintiff did not mention that she was participating in physical therapy or had plans to do so despite the fact that she had obtained a medical card.

Finally, although plaintiff alleges she has a diagnosis of cervical radiculopathy resulting from degenerative disc disease which ALJ Smith failed to consider in formulating the RFC, plaintiff cites no record evidence to show that she has a severe neck impairment which imposes any functional limitations or which has worsened since the date of the prior ALJ decision. *See Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988) (mere diagnosis of disorder did not entitle claimant to benefits in absence of evidence showing she was disabled by disorder). *See also Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988) (mere diagnosis of a condition provides no indication as to the severity of the condition). Thus, ALJ Smith did not err by failing to take plaintiff's neck impairment into account.

To conclude, ALJ Smith thoroughly reviewed the medical evidence for the period subsequent to ALJ Rodner's decision. ALJ Smith's decision that there is no new and material evidence showing plaintiff's condition has worsened during that time is supported by substantial evidence. Accordingly, ALJ Smith was bound by ALJ Rodner's findings that plaintiff had the RFC for light work with certain postural limitations; plaintiff was capable of performing her past relevant work as a cashier; and plaintiff had the capacity to perform other unskilled and semi-skilled light and sedentary jobs that exist in significant numbers in the national economy. (*See* Tr. 34-35). ALJ Smith's decision that plaintiff has not been under a disability at any time since February 23, 2007, is supported by substantial evidence and should be affirmed.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED**.

Date: 6/22/2011

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PEGGY WAY,
    Plaintiff

vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:10-cv-535
Dlott, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to these proposed findings and recommendations within **FOURTEEN DAYS** after being served with this Report and Recommendation ("R&R"). That period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **FOURTEEN DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).